**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 08-698-PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| Prisciliano Gomez-Guilian, | |
| Defendant. | |

On January 26, 2010, the Court held a competency hearing pursuant to 18 U.S.C. § 4241(c) to determine whether Defendant Prisciliano Gomez-Guilian is competent to stand trial. The Court heard video testimony from Dr. Bruce Berger, a staff psychiatrist at the Federal Medical Center in Butner, North Carolina. The Court has also considered a 14-page forensic evaluation from the Butner Facility dated June 19, 2009, a report from Dr. Kathryn A. Menendez dated October 9, 2008, and a report from Dr. David Hermosillo-Romo dated November 18, 2009. Following the hearing, the Court requested additional information from defense counsel. Dkt. #75. Further memoranda were filed by Defendant and the government. Dkt. ##76, 77. Having considered all of this information, the Court concludes that Defendant is competent to stand trial.

## I. Legal Standard.

The Court must determine whether Defendant "is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense[.]" 18 U.S.C. § 4241(d). The Ninth Circuit has explained that "competence to stand trial does not

consist merely of passively observing the proceedings. Rather, it requires the mental acuity to see, hear and digest the evidence, and the ability to communicate with counsel in helping prepare an effective defense." *United States v. Woodford*, 238 F.3d 1084, 1089 (9th Cir. 2001). The Court must apply a preponderance of the evidence standard. 18 U.S.C. § 4241(d). The government has the burden of showing that the defendant is competent to stand trial. *United States v. Hoskie*, 950 F.2d 1388, 1392 (9th Cir. 1991).[1]

**II.     Factual Determinations.**

Defendant is a 45-year-old Hispanic male and a Mexican national. At the request of defense counsel, Defendant was examined by Dr. Kathryn A. Menendez. In a report dated October 9, 2008, Dr. Menendez concluded that Defendant was not competent to stand trial. Dkt. #39-1. Dr. Menendez observed that Defendant sometimes refused to answer questions, often had difficulty focusing on questions or tests, would laugh when confronted with inconsistencies, and generally engaged in behavior suggesting cognitive deficits and neuro-psychological issues. Defendant tested below average on a math computation score and appeared personally and socially inept. His answers were sometimes child-like and often irrational or inaccurate. As the evaluation progressed, Defendant developed increasing resistance to questions and testing. Dr. Menendez ultimately concluded that Defendant is not competent to stand trial, but is restorable. She concluded that the basic nature of his incompetence was cognitive deficiency and a personality disorder that renders him socially inept, passive, and dysfunctional. Dr. Menendez observed that "[i]t is possible that Mr.

---

[1] There is a split of authority on whether the government or the defendant bears the burden of proof on this issue. The Ninth Circuit is one of a number of federal courts that have placed the burden on the government. *See United States v. Nichols*, 56 F.3d 403, 410 (2nd Cir. 1995) (collecting cases). At least one circuit has held that the burden rests on the defendant. *See United States v. Robinson*, 404 F.3d 850, 856 (4th Cir. 2005). The Supreme Court has stated in *dictum* that "Congress has directed that the accused in a federal prosecution must prove incompetence by a preponderance of the evidence." *Cooper v. Oklahoma*, 517 U.S. 360, 362 (1996). This statement, however, was made in passing, without analysis of § 4241(d), and in an opinion where the Supreme Court noted without objection that numerous states place the burden on the prosecution. *Id*. at 361-62. Because the Supreme Court's statement is *dictum*, this Court will follow the Ninth Circuit rule.

Gomez' functioning will improve when offered mental health services for the period of time allowable for restoration purposes. This will also allow for a longer period of diagnostic observation and treatment if necessary. Services will need to be provided in his native language and behavior modification employed." *Id*. at 10.

On the basis of Dr. Menendez's conclusions, the Court committed Defendant to the custody of the Attorney General for placement in a suitable facility pursuant to 18 U.S.C. § 4241(d). Dkt. #45. The Attorney General transported Defendant to the Butner Facility where his primary examining physician was Dr. Kelly M. Adams. In the forensic evaluation completed more than four months after Defendant's arrival, Dr. Adams concluded that Defendant is competent to stand trial. Dkt. #50.

Defendant was admitted directly to an open mental health unit. During the course of his stay of more than four months, Defendant remained in the open unit with the exception of a one-day period when he was removed due to a disciplinary infraction. *Id*.

Defendant was interviewed by Dr. Adams concerning his understanding of the trial process. Interviews were conducted using a Spanish interpreter phone service. Defendant reported his current charge to be illegal entry into the United States. He observed that this was not a serious offense, as drugs and weapons were not involved. He was aware, however, that he could face incarceration and deportation if convicted. *Id*. at 5.

Defendant described the role of the prosecutor as "to find a way to lock you up, to give you time." *Id*. He reported that the prosecutors worked against him. He described the role of his defense attorney to be "to speak to the judge for me." *Id*. He noted that the defense attorney was on his side. *Id*.

Defendant described the Judge as "the one who does the decision." *Id*. He observed that the Judge is neutral and makes the decision based on the courtroom interaction with the lawyers. Defendant reported that the jury is a group of 12 people who decide the case. *Id.*

Defendant could not describe the plea bargaining process in detail, but reported that it was "something legal, something good for you." *Id*. He understood that he was not

required to accept an offered plea bargain and stated that he would accept one only if it "would help in my situation." *Id*.

Testing at the Butner facility revealed that Defendant has a below average intelligence quotient of 83, placing him in the 13th percentile. He was found to have cocaine dependency in early full remission, opiate abuse in early full remission, cannabis abuse in early full remission, and adult antisocial behavior. Dr. Adams reported that Defendant did not exhibit traits of a personality disorder to warrant a personality disorder diagnosis. *Id.* at 6-8.

The forensic evaluation concluded with these observations:

> [W]e opine that Mr. Gomez-Guilian is not suffering from a mental defect that prohibits him from understanding the nature and objective of the proceedings against him nor prevents him from being able to assist properly in his defense. Though he had a limited amount of formal education, he has not demonstrated an inability to learn and apply the information needed to assist his attorney. He has a factual and rational understanding of basic legal concepts, including courtroom personnel, plea options, his current charges and punishment associated with being found guilty. He understands the purpose and adversarial nature of a trial and his role in the proceedings. He did not describe the process of plea bargaining, but expressed understanding of how the process results in a lesser sentence in exchange for pleading guilty. In summary, Mr. Gomez-Guilian is currently competent to proceed to trial.

*Id*. at 8. In addition to the forensic evaluation, the warden of the Butner Facility, Sara M. Ravell, provided a certificate that Defendant is competent to stand trial. *Id*. at 13.

Dr. Adams' supervisor was Dr. Bruce Berger, a staff psychiatrist at Butner. Because Dr. Adams is no longer employed at the facility, Dr. Berger testified at the competency hearing held on January 26, 2010. Dr. Berger testified that Defendant was able to function in an open psychiatric ward throughout his stay at the Butner Facility. He remained stable, displayed no behavioral problems, and had no need of prescribed medication. Although his intelligence screen was in the low average range, no cognitive deficits were noted.

Dr. Berger observed that Defendant has engaged in significant substance abuse. The doctors at Butner concluded, nonetheless, that he is competent to stand trial. Dr. Adams found that Defendant understood the basics of the criminal justice system. Dr. Berger testified that Defendant's diagnosis was not a close call. He clearly is competent.

Through cross-examination and argument, defense counsel asserted that Defendant's evaluation by use of a Spanish interpreter phone service was questionable. She noted that the government had provided no evidence of the training received by the interpreters, nor that tests administered to Defendant had been validated for Spanish-language users. But neither did Defendant present evidence that the translation services or tests were deficient.

Following Defendant's return to Arizona, counsel for Defendant requested another competency evaluation. With the Court's approval, Defendant was seen by Dr. David Hermosillo-Romo, a Ph.D. clinical psychologist. In a report dated November 18, 2009, Dr. Hermosillo-Romo described an evaluation in which Defendant refused to cooperate. Defendant protested that he was tired of being treated like a toy and playing games. He observed that the authorities were making a big deal out of nothing and "just want to get me confused so they can give me more time." At times, Defendant was visibly angry, sarcastic, and emotionally agitated. Dr. Hermosillo-Romo concluded that information about his competency to stand trial could not be obtained.

The Supreme Court has explained that a "defendant's inability to assist counsel can, in and of itself, constitute probative evidence of incompetence, and defense counsel will often have the best-informed view of the defendant's ability to participate in his defense." *Medina v. California*, 505 U.S. 437, 450 (1992). As a result, the Court afforded defense counsel an opportunity to submit additional evidence following the hearing on January 26, 2010. The Court invited such evidence "in the form of affidavits, concerning the problems defense counsel have had in working with defendant." Dkt. #75.

In response, defense counsel filed a supplemental memorandum. Dkt. #76. The memorandum indicates that Defendant's two previous counsel were unable to recall any details of their representation of Defendant and therefore could not provide relevant information. Current defense counsel stated that her interactions with Defendant have been characterized by repetition of salient facts and redirecting Defendant repeatedly, that he is unable to stay on topic very long and typically smiles and looks away inappropriately, and

1  that this behavior led defense counsel to file a motion to determine competency. No affidavits or other evidentiary material were submitted by defense counsel. *Id.*

**III.  Conclusion.**

The Court concludes, by a preponderance of the evidence, that Defendant is able "to understand the nature and consequences of the proceedings against him" and "to assist properly in his defense." 18 U.S.C. § 4241(d). The four-month evaluation of Defendant at the Butner Facility, the 14-page forensic evaluation produced by doctors at the facility, and the testimony of Dr. Berger at Defendant's competency hearing combine to establish Defendant's competency by a preponderance of the evidence. Although Dr. Menendez reached a contrary conclusion, her report was based on a much more limited examination of Defendant, was closer in time to his intensive drug abuse, and is now more than one year old. Defendant's refusal to cooperate with Dr. Hermosillo-Romo prevented him from providing any probative opinion. Although current defense counsel indicates she has had difficulty working with Defendant, she has submitted no evidence in support of that assertion. Moreover, her description of her interactions with Defendant are not unlike those experienced by Dr. Hermosillo-Romo. They show Defendant being uncooperative, but do not outweigh the substantial evidence of competency provided by Defendant's evaluation at the Butner Facility.

Excludable delay pursuant to U.S.C. § 18:3161(h)(1)(A) is found to commence on September 30, 2009 for a total of 154 days.

DATED this 2nd day of March, 2010.

_____
David G. Campbell
United States District Judge